DAVIS COUNTY SAVINGS BANK, An Iowa Banking Corporation, Appellee,

v.

PRODUCTION CREDIT ASSOCIATION OF the MIDLANDS f/d/b/a Ottumwa Production Credit Association, Appellant.

No. 86–1675.

Supreme Court of Iowa.

Feb. 17, 1988.

Randall C. Stravers of Clements, Pothoven, Pabst & Stravers, Oskaloosa, for appellant.

John B. Martin of Stephens & Martin, Bloomfield, for appellee.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SCHULTZ, Presiding Justice.

This appeal involves a dispute as to who is entitled to $9713.24 in proceeds received from the public sale of certain farm equipment on December 13, 1982. The proceeds were initially retained by appellant Production Credit Association (PCA) by stipulation with appellee Davis County Savings Bank (bank). The bank brought this action to recover the proceeds and the district court ruled in its favor. Because we believe the district court erred, we reverse its decision.

The equipment in question was originally owned by Dale and Shirley Hendricks. Since the early seventies Dale and Shirley have received numerous loans from the bank to finance their farming operation. The loans were covered by a security agreement granting the bank an interest in their equipment. A clause in the agreement made the equipment involved in this case security for all future advances to be made by the bank. *See* Iowa Code § 554.9204(3) ("[o]bligations covered by a security agreement may include future advances").

In December 1979 Dale and Shirley transferred possession of the equipment to Dan and Amber Hendricks, their son and daughter-in-law. The transfer was in the form of a lease/purchase agreement under which Dan and Amber were to take possession immediately and pay installments of $6000 per year for ten years. The total of $60,000 was based on the value of the equipment at the time of transfer. Dale and Shirley were to retain title to the equipment until Dan and Amber had fully performed under the lease/purchase agreement, at which time Dan and Amber would receive title and become the owners outright for no additional consideration. Dan and Amber granted a security interest in this equipment to PCA which was perfected by filing on December 11, 1979.

At this point in time both the bank and PCA had valid security interests in the same equipment, the bank as Dale and Shirley's lender and PCA as Dan and Amber's. The parties agree that perfection of the bank's interest related back to 1971, and that it had a prior interest to the extent of Dale and Shirley's outstanding obligations. In February 1980 Dale and Shirley paid off all their outstanding indebtedness to the bank. In July 1980 the bank began making additional loans under the same security agreement.

PCA claims that the bank did not retain a security interest in the equipment when, after the transfer to Dan and Amber, Dale and Shirley no longer owed money to the bank. The bank claims it retained its lien on the equipment even after the prior debt was satisfied under its future advance clause. Both parties cite to and rely on various sections of the Uniform Commercial Code (Code), Iowa Code chapter 554. We believe that the provisions of the Code resolve this appeal.

The issue presented is whether the future advance clause in the bank's security agreement gave it priority over PCA for the bank's additional advances beginning in July 1980. We hold that the future advance clause was not effective against PCA and that PCA is entitled to the proceeds of the collateral.

Our decision is based on Iowa Code section 554.9307(3) (1979). That section reads as follows:

> A *buyer* other than a buyer in ordinary course of business (subsection 1 of this section) *takes free of a security interest to the extent that it secures future advances made* after the secured party acquires knowledge of the purchase, or *more than forty-five days after the purchase*, whichever first occurs, unless made pursuant to a commitment entered into without knowledge of the purchase and before expiration of the forty-five day period.

*Id.* (emphasis added). This provision was added by amendment in 1974, 1974 Iowa Acts ch. 1249, § 48, as part of a 1972 revision of the Code and has not yet been construed by this court. We will first discuss whether Dan and Amber, and therefore PCA, are entitled to the benefits of this section and then apply the section to the facts.

■ Section 554.9307(3) provides protection to "buyers" of collateral who are not entitled to the protection afforded buyers in the ordinary course of business under section 554.9307(1). Due to their knowledge of the bank's security interest, Dan and Amber are not buyers in the ordinary course of business. *See* Iowa Code § 554.1201(9). Thus, the issue is whether they are "buyers" entitled to protection under subsection (3). We conclude that Dan and Amber did acquire sufficient interest in the collateral under the lease/purchase agreement to make them buyers.

The trial court concluded that the lease/purchase agreement did not transfer ownership of the equipment to Dan and Amber. Although we have serious doubt about that conclusion, we need not disturb it as it involved issues not relevant to our discussion. The trial court did not decide whether Dan and Amber were "buyers" under section 554.9307(3), however. As the issue can be resolved as a matter of law, we will do so.

The transaction between Dale and Shirley and Dan and Amber, although designated a "lease/purchase" agreement, was a transfer of interest with reservation of title as security. Although Dale and Shirley retained title, Iowa Code section 554.-1201(37) (definition of security interest) states that "retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 554.-2401) is limited in effect to a reservation of a 'security interest'." This subsection further provides that "an agreement that upon compliance with the terms of the lease the lessee shall become ... the owner of the property for no additional consideration ... does make the lease one intended for secur-

ity." *Id.* Consequently, under the Code Dale and Shirley are left with only a security interest in the equipment. The remainder of their interest was transferred to Dan and Amber.

This conclusion is in accordance with other Code provisions. All the provisions of Iowa Code chapter 554, article 9, including section 554.9307(3) apply without regard to whether Dale and Shirley retained title. *See* Iowa Code § 554.9202; *cf.* Iowa Code § 554.2401(2) (under article 2, title to goods passes upon completion of performance by the seller despite retention of title for security). It is clear that retention of title by Dale and Shirley should have no legal effect in this case. With that in mind we now turn to the terms used in the statute.

Although the term "buyer" is not defined in the Code, the term "purchase" is. A "purchase" is "any voluntary transaction creating an interest in property, including taking by sale, discount, negotiation, mortgage, pledge, voluntary lien, issue, reissue or gift." Iowa Code § 554.1201(32). Under this broad definition, Dan and Amber clearly "purchased" an interest in the farm equipment. As used in section 554.9307(3) the terms "purchase" and "buyer" refer to the same transaction and so, because Dan and Amber "purchased" the equipment they are entitled to the protection provided.

Parenthetically, it should be noted that Dan and Amber did purchase the equipment subject to the security interest retained by Dale and Shirley. However, that is not relevant to this dispute. Dale and Shirley never perfected their interest and the bank does not claim its interest by virtue of the retention of title.

■ Because Dan and Amber are "buyers" entitled to protection under section 554.9307(3), application of the statute to these facts is fairly easy. The bank claims a security interest under a future advance clause for funds advanced more than forty-five days after the purchase by Dan and Amber. Because the advances were not made pursuant to a commitment entered into within the forty-five day period, the plain words of the statute mean that Dan and Amber took the equipment free of the

bank's claimed interest. As successor to Dan and Amber's interest, the PCA also takes free. This is precisely the type of situation at which the statute is aimed.

The purpose behind section 554.9307(3) is to limit the extent to which future advances clauses apply. When the drafters of the Code added this subsection as a part of the 1972 Code revision, they also added two other subsections limiting the effect of future advance clauses. Those subsections also became part of our law, 1974 Iowa Acts ch. 1249, §§ 41, 52, and are presently codified at sections 554.9301(4) and 554.-9312(7). As stated in one commentary, these subsections were added "to make clear what limitations exist with respect to future-advance clauses." 8 W. Hawkland, R. Lord & C. Lewis, *Uniform Commercial Code Series*, Article 9: Secured Transactions § 9–204:05, at 504 (1986).

While future advance clauses are allowed under our law, *see* Iowa Code § 554.9204(3), the drafters of the Code and our legislature found it prudent to limit the effect of a future advance clause after transfer of the collateral to a buyer. Section 554.9307(3) strikes a balance between the interests of a creditor who has obtained an interest in collateral to secure future advances and the interests of one who buys the collateral.

> The provision proceeds on the assumption that, after an appropriate grace period, a creditor should know whether the collateral has been sold before making another advance or committing himself to one. Unless he has knowledge to the contrary, the secured party is allowed for 45 days to assume that the debtor still owns the collateral. Advances made with knowledge, or after the 45-day period, may not be secured by the sold collateral.

1 *Bender's Uniform Commercial Code Service,* Secured Transactions § 3A.03[1][c], p. 202 (1979).

In summary we conclude that Dan and Amber took free of the bank's security interest in the property under 554.9307(3). The PCA is entitled to the proceeds from the sale of the farm equipment. The judgment of the district court is reversed.

REVERSED.